**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**REBECCA LINETTE BROWN,**

     **Plaintiff,**

**vs.**                                **Case No. 4:21-CV-453-MAF**

**KILOLO KIJAKAZI,
ACTING COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,**

     **Defendant.**

_____/

## O R D E R

This Social Security case was referred to the undersigned upon consent of the parties, ECF No. 17, by Chief United States District Judge Mark Walker. ECF No. 18. It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner of the Social Security Administration (Acting Commissioner) denying Plaintiff's application for period of disability and disability insurance benefits (DIB). Tr. 75-76. [1] After careful consideration of the record, the decision of the Acting Commissioner is affirmed.

---

[1] References to the record in this case will be to "Tr." followed by the relevant page number.

## I. Procedural History

Plaintiff's underlying claim has been pending for more than a decade and has been subjected to several layers of review, both at the administrative level and at the district court level.

On October 26, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of February 23, 2009. Tr. 44, 76.[2] Plaintiff's claim was denied initially on April 5, 2012 (Tr. 46-48), and upon reconsideration on June 18, 2012. Tr. 50-53. A hearing was held before Administrative Law Judge (ALJ) Frederick McGrath on November 19, 2013; and he denied Plaintiff's application on December 13, 2013. Tr. 508-15. The Appeals Council denied Plaintiff's request for review on May 1, 2015. Tr. 1-5. Thereafter, the matter was reviewed by consent of the parties by United States Magistrate Judge J. Clay Fuller, who reversed ALJ McGrath's Order and remanded the case to the Commissioner to explain the basis for ALJ McGrath's conclusion that Plaintiff could perform her past relevant work despite the opinion of the vocational expert (Patricia McMurray) that Plaintiff could not perform such work. Tr. 483-95. In the absence of a supported finding that Plaintiff could still do her past relevant work, the Commissioner was directed by the Court to obtain "the testimony of a vocational

---

[2] The Procedural and Jurisdictional Facts described in Plaintiff's Memorandum (ECF No. 12, p. 2) were accepted as accurate by Defendant. ECF No. 16, p. 2.

Case No. 4:21-CV-453-MAF

expert to determine whether a person of Plaintiff's age, education, work experience, and RFC can perform a significant number of jobs in the national economy." Tr. 494-95.

On September 7, 2016, pursuant to the Order of the district court, the Appeals Council vacated ALJ McGrath's opinion and remanded the matter for another hearing before an administrative law judge. Tr. 499. Following a hearing held on September 20, 2017, ALJ William Callahan issued an Order on February 6, 2018, finding that, even though she was not capable of performing her past work because of her mental health and physical limitations, Plaintiff was not disabled because she was capable of doing other work that existed in significant numbers in the national economy during the relevant period prior to December 31, 2014. Tr. 523-36.

Plaintiff filed exceptions to ALJ Callahan's Order. Tr. 605-09. In response to those exceptions, Plaintiff's claim was again remanded by the Appeals Council to an ALJ to reconsider the impact of the mental health testimony regarding Plaintiff's limitations on social functioning on Plaintiff's ability to interact with others in any potential employment in any positions identified by a vocational expert as available in the national economy. Tr. 544-45.

ALJ Lisa Raleigh held a hearing on January 24, 2020, at which the Plaintiff (individually and through counsel, John V. Hogan) and John Black, an impartial

vocational expert (VE), appeared (either in person or by video) and testified. Tr. 406-21; 441-44 (Plaintiff's testimony); Tr. 421-40 (VE testimony); Tr. 769-71 (VE resume). At the hearing, ALJ Raleigh admitted medical records, prior hearing records, and other documents relating to Plaintiff's claim, specifically, Exhibits 1A-9A, 1B through 28B, 1D-27D, 1E-18E, and 1F-17F. Tr 1-1346. Thereafter, ALJ Raleigh issued the decision, which is under review, concluding that there were jobs in the national economy that Plaintiff could perform during the relevant time period. Tr. 381-94.

Through counsel, Plaintiff filed her complaint with this Court on November 11, 2021. ECF No. 1. The Acting Commissioner filed an answer on January 27, 2022. ECF No. 9. Plaintiff filed a memorandum in support of her position on February 28, 2022. ECF No. 12. The Acting Commissioner filed a responsive memorandum in support of the Acting Commissioner's position on April 30, 2022. ECF No. 16. This matter is ripe for review.

## II. Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th

Cir. 2002); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial

evidence is more than a scintilla, but less than a preponderance. It is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion."

<u>Bloodsworth</u>, 703 at 1239 (citations omitted); <u>accord</u> <u>Moore v. Barnhart</u>, 405 F.3d

1208, 1211 (11th Cir. 2005).[3]

The Court may not decide the facts anew, reweigh the evidence, or substitute

its judgment for that of the Commissioner, <u>Bloodsworth</u>, 703 F.2d at 1239, although

the Court must scrutinize the entire record, consider evidence detracting from the

evidence on which the Commissioner relied, and determine the reasonableness of

the factual findings. <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992). Review

is deferential, but the reviewing court conducts "an independent review of the

record." <u>Flynn v. Heckler</u>, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that

the claimant is not only unable to do past relevant work, "but cannot, considering

[her] age, education, and work experience, engage in any other kind of substantial

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) only if she is under a disability prior to the expiration of her insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

---

[4] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term 'residual functional capacity assessment' describes an

Case No. 4:21-CV-453-MAF

5.    Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating she cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work

---

adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

Case No. 4:21-CV-453-MAF

suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as "Paragraph B" criteria. <u>Schink v. Comm'r of Soc. Sec.</u>, 935 F.3d 1245, 1269 (11th Cir. 2019) (per curiam). The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. 20 C.F.R. § 404.1520a(c)(3).

The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning. 20 C.F.R. § 404.1520a(c)(4). The ALJ must explain the results of this inquiry in the findings and conclusions. <u>Moore</u>, 405 F.3d at 1213–14. To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an "extreme" limitation in one of the four functional areas or a "marked" limitation in two. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

A "mild" rating indicates that the claimant's functioning is "slightly limited;" a rating of "moderate" indicates a "fair" limitation; a "marked limitation" indicates claimant's functioning is "seriously" limited; and "extreme limitation" means

claimant is "not able to function in this area" § 12.00(F)(2)(b), (c), (d), (e). The ALJ is to consider all "relevant medical and non-medical evidence" in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community. Id. § 12.00(F)(3)(a)–(b).

The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four. Winschel v. Comm'r of Social Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). But though the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitations in a hypothetical posed to the VE. Id., at 1180–81.

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.

Prior to 2017, an ALJ was required to give the treating physician's opinion "substantial or considerable weight unless 'good cause' was shown to the contrary."

Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis v. Callahan, 128 F.3d 1436, 1440 (11th Cir. 1997). In 2017, the Commissioner issued a new regulation, 20 C.F.R. 1520c, which abrogated the "treating physician rule." Harner v. SSA, Comm'r, 38 F.4th 892, 896 (11th Cir. 2022). But this only applies to SSI and disability insurance applications filed *after* March 27, 2017. That is not the case here. Because Plaintiff filed her application for benefits *before* March 27, 2017, the treating physician rule applies.

If the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. SSA Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

**III. ALJ Raleigh's Findings**

ALJ Raleigh properly articulates and follows the five-step sequential evaluation process for determining disability. See 20 CFR § 416.920(a). In doing so, ALJ Raleigh made the following findings (finding in bold):

1. **The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.** Tr. 383. As noted by ALJ Raleigh, this is a claim for Title II benefits only and, therefore, the relevant question here is whether Plaintiff was disabled under the act during the relevant period – between

February 23, 2009 (the alleged onset date) and December 31, 2014 (the date last insured). Tr. 383. This fact is not in dispute.

2.      **The Claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 23, 2009, through her date last insured of December 31, 2014 (20 CFR 404.1571** *et seq.* Tr. 383. This fact is not in dispute.

3.      **Through the date last insured, the claimant had the following severe impairments: obesity; panic disorder with agoraphobia; and major depressive disorder (20 CFR 404.1520(c)).** Tr. 384. ALJ Raleigh concluded that these impairments significantly limit Plaintiff's work activities. Id. ALJ Raleigh also concluded that Plaintiff's hypothyroidism, hypertension, gastroesophageal reflux disease, migraine headaches, obstructive sleep apnea, and hyperlipidemia do not constitute severe impairments during the period at issue inasmuch as they were ameliorated through routine monitoring and medications and no treating source assigned any long-range limitations due to these disorders. Id. Such conditions were, however, considered in assessing Plaintiff's residual functional capacity.[5]

4.      **Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the**

---

[5] ALJ Raleigh also noted that menopause is not an impairment per se. Tr. 384.

**severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 104.1525 and 404.1526).** Tr. 384. With respect to Plaintiff's obesity, ALJ Raleigh noted that such a condition is not dealt with directly in the listings, but rather such condition had to be considered at each stage of the sequential evaluation process. Id. As noted by ALJ Raleigh, Plaintiff had a body mass index (BMI) of 44.79 during the relevant period, exceeding the limits for medically determinable obesity. Tr. 294 ALJ Raleigh went on to find that Plaintiff's obesity had more than a minimal effect on Plaintiff's ability to perform basic work-related tasks, and thus constitutes a severe impairment, but were not sufficiently severe, either singularly or in combination with other impairments, to "medically equal" or exceed a listed impairment. ALJ Raleigh additionally states that she considered Plaintiff's obesity in determining Plaintiff's residual functional capacity.

ALJ Raleigh also considered Plaintiff's mental health impairments and considered whether those conditions, either singularly or collectively, equaled or exceeded the criteria of listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). Tr. 384-85. In doing so, ALJ Raleigh determined whether such limitations satisfied the "Paragraph B" criteria; that is, did Plaintiff have a condition which constitutes an "extreme limitation" (one marked by an inability to function independently) or two conditions which constitute

Case No. 4:21-CV-453-MAF

a "marked limitation (marked by a serious limitation on the ability to function independently, appropriately, or effectively on a sustained basis). T. 385.

According to ALJ Raleigh, Plaintiff did not have any extreme or marked limitations:

(1)     With respect to understanding, remembering, or applying information, ALJ Raleigh determined that Plaintiff was only mildly limited during the relevant period. She is a well-educated, highly skilled worker who handled financial transactions and read daily (Tr. 89), and had no record of cognitive deficiencies during the relevant period. Moreover, she participated in the hearing, responding to detailed questions and independently reciting the findings of the ALJ from a prior hearing. Tr. 385.

(2)     In interacting with others, ALJ Raleigh concluded that Plaintiff was moderately limited. There were no speech or communication deficits manifested in her mental health records; she had a history of leisure travel at or near the date last insured, including a cruise and attending her son's wedding; and, she carried on an extended conversation with ALJ Raleigh and her representative during the hearing. While ALJ Raleigh acknowledged that Plaintiff was limited in her ability to interact with coworkers or the public, ALJ Raleigh did not believe the full evidence supported a conclusion that Plaintiff had a marked or extreme limitation in this area. Tr. 385.

(3)     ALJ Raleigh concluded that Plaintiff was only moderately limited with respect to concentrating, persisting, or maintaining pace during the relevant period. While ALJ Raleigh acknowledged that the agency consultants found that Plaintiff was not capable of complex tasks, and otherwise had significant difficulties in this area, ALJ Raleigh did not believe Plaintiff's challenges amounted to a marked or extreme limitation on Plaintiff. Tr. 385.

(4)     ALJ Raleigh determined that Plaintiff was moderately limited with respect to adapting or managing herself. While she was not driving, she was capable of self care, doing small chores, running small errands, shopping with adjustments, and caring for her pets. Though the state consultant found Plaintiff only mildly limited in this area, ALJ Raleigh found she was moderately limited. Tr. 385.

Case No. 4:21-CV-453-MAF

ALJ Raleigh also concluded that Plaintiff's mental impairments do not meet or medically equal the "Paragraph C" criteria of listings 12.04 (serious and persistent depressive disorder) and 12.06 (serious and persistent anxiety/obsessive-compulsive disorder). Tr. 386.

5. **After careful consideration of the entire record, ALJ Raleigh found that through the date last insured, the claimant had a residual functional capacity to perform a reduced range of medium work as defined in 20 CFR 404.1567(c). The claimant could not climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs. She could frequently balance, stoop, kneel, crouch, and crawl. She could not tolerate exposure to workplace hazards. She could tolerate up to frequent exposure to humidity, wetness, extreme heat, dust, odors, and fumes. The claimant could perform simple, routine tasks, at a reasoning level of 1 or 2 as defined by the Dictionary of Occupational Titles, Appendix C. She could tolerate few workplace changes. She could tolerate occasional interaction with supervisors, coworkers, and the public, but with no teamwork tasks and no direct public service.** Tr. 386.

ALJ Raleigh exhaustively detailed the alleged results of Plaintiff's claimed impairments during the relevant period: inability to deal with conflict, criticism, or, more broadly "other people"; emotional outbursts; lax self-care; requiring

encouragement and constant reminders; lack of focus and attention span; inability to follow instructions, complete tasks, drive, or tolerate stress. Tr. 387. The testimony received during the three hearings held in this case were consistent with Plaintiff's contentions. Plaintiff continues to allege panic attacks, depression, agoraphobia, and paralyzing fear during the relevant period.

**Physical Impairments**

ALJ Raleigh then proceeded to examine the medical records during the relevant period. Plaintiff was seen at the Lawrenceville Family Practice numerous times between February 2009 and June 2012. These include: hypertension; iron deficiency anemia; headaches (but a normal CT scan); shortness of breath and heart palpitations (but normal cardiac studies); sleep apnea (but no sleep study); bariatric bypass surgery; a normal spirometric study; and routine treatment for coughs, upper respiratory infection, and a dog bite. Plaintiff's anxiety was also addressed intermittently. Tr. 388.

Plaintiff also was treated at Kaiser Permanente between August 2007 and August 2017. Plaintiff's early care, prior to 2008, involved a gynecological examination and anxiety related chest pain. Her other physical complaints relate to headaches, reflux disease, thyroid dysfunction, hypertension, obesity, sleep apnea, and an ankle injury. She also had routine screenings, such as mammograms, during

that period. According to ALJ Raleigh, the medical records do not reflect any long-range functional limitations based on these physical conditions. Tr. 388.

On June 15, 2012, Plaintiff completed a functional capacity assessment with Dr. Arthur Lesesne, MD, a state agency medical consultant. Dr. Lesesne concluded that Plaintiff should be limited to medium exertion (lifting/carrying 50 pounds occasionally and 25 pounds frequently); that Plaintiff could stand or walk six hours in the eight-hour workday; that Plaintiff could sit for six hours in the eight hour workday; that Plaintiff could occasionally climb stairs and ramps, but not ladders, ropes, or scaffolds; that Plaintiff could frequently balance, stoop, kneel, crouch and crawl; and that Plaintiff should avoid exposure to heat, humidity, and workplace hazards. Tr. 388.

**Mental Health Impairments**

With respect to Plaintiff's alleged mental health impairments, ALJ Raleigh detailed the care that Plaintiff received during the relevant period. First, she references care provided by Lawrenceville Family Practice, which infrequently mentioned anxiety, but did note on three separate occasions that Plaintiff was "Alert and oriented x3, normal mood and affect, normal attention span and concentration." Tr. 207, 295, 332, 388. Those records also reflect that Plaintiff was prescribed

Case No. 4:21-CV-453-MAF

psychotropic medications (Lexapro and Effexor) by this provider on two occasions. Tr. 237, 336, 388.

James Gonzalez, Ph.D, provided counseling services between February 12, 2009 and March 22, 2011, but his real-time clinic notes were not submitted or included in the record. Tr. 388. Instead, Dr. Gonzalez provided a letter dated November 28, 2011, that summarized the treatment he provided. Tr. 162-65. Those notes detail Plaintiff's ongoing struggles with debilitating anxiety relating to her job uncertainty, pending termination, family issues and health related issues (anemia, Graves' disease, high blood pressure and morbid obesity). Plaintiff's complaints included poor self-esteem, aggressive thoughts, socially avoidant behavior, chest pain, hyperventilation, hypervigilance, distractibility, impaired attention and concentration, memory problems, panic, and worry. Tr. 389. Dr. Gonzalez focused his care to cognitive therapy and relaxation techniques, and reported minimal gains, including walks to the mailbox and walks around her neighborhood. There was some improvement after Plaintiff's gastric bypass, but that was short-lived. Plaintiff discussed pursuing a home-based job which would be low stress and not involve contact with other people. Plaintiff ceased treatment with Dr. Gonzalez without notice or explanation in March 2011. Id.

Case No. 4:21-CV-453-MAF

Plaintiff also received mental health care from Jeffrey Flatow, MD, a psychiatrist. That treatment spanned February 2009 through May 2010. Plaintiff complained of anxiety, panic attacks, and social conflicts, all of which were exacerbated by her loss of employment. While Plaintiff reported she had "struggles", mood of "lows very low" and an inability to leave the house, she also reported "doing OK" and "doing well" on occasion. Tr. 150-51, 389.

Norman Lee, Ph.D performed a psychological examination on February 20, 2012. Plaintiff reported low level anxiety over several years which had gotten worse with the loss of her job and filing for bankruptcy. Her anxiety related to social situations and crowds, where she feared scrutiny from others. Medications were helpful; Plaintiff performed self-care and small chores when motivated; and could shop with her husband. While she was anxious and her affect was restricted, she was cooperative and oriented to person, place, time, and situation; and had no speech or communication deficits, thought disorders, hallucinations, delusions, or cognitive deficits. Her memory was intact, she performed well with number sequencing and could receive and execute basic and complex directions, concentrating for extended times with appropriate pace. Dr. Lee diagnosed social phobia and noted that persistence on more difficult tasks may be slightly limited and that interaction with

coworkers and the public and her ability to adapt to work stresses would be "slightly to somewhat limited." Tr. 166-70, 389-90.

Plaintiff also received care from mental health practitioners at Kaiser-Permanente throughout 2014. Cris Elizabeth Moore, a Psychological Nurse Specialist, provided counseling to Plaintiff wherein Plaintiff confirmed she was not working; she did not drive due to stress and the tendency to overreact; she was accompanied by her husband everywhere; she no longer attended church or interacted with people; and she had panic attacks accompanied by shortness of breath, shaking, sweating, and hyperventilating. She was diagnosed by Nurse Moore with social phobia and depression. Tr. 390, 926-31. Plaintiff saw other social workers for therapy visits thereafter, reconfirming the continued stress and anxiety that was plaguing her. Tr. 390. Psychiatrist Alice Helmberg-Frank, MD, provided therapeutic services to Plaintiff after October 2014. She reported the same anxiety caused by employment instability. She was diagnosed with panic disorder with agoraphobia and depression, with decreased memory and judgment, but no thought disorders or psychoses. Some of her 2015 visits noted a decrease in anxiety, but more anger and concern for her overreactions. Plaintiff was given a global assessment of function score (GAF) ranging from 50-60 (serious to moderate symptoms). Later care from Kaiser-Permanente providers were considered by ALJ Raleigh to be

Case No. 4:21-CV-453-MAF

further and further removed from the date last insured, and therefore less relevant to the determination of Plaintiffs RFC during the relevant period. Id.

ALJ Raleigh also reviewed records relating to the care provided by Danielle Johnson, MSW, LCSW. That course of treatment occurred over a six-month period and is evidenced by a letter dated January 17, 2020. Tr. 391, 1346.  The letter confirms Plaintiff has had ongoing battles with depression and anxiety, that her progress has been slow despite her efforts, and that her condition makes it difficult for her to obtain employment or be in a social environment. Id.

In addition to the treating providers she saw, Plaintiff was also examined by two state agency psychological consultants: D. B. Johnson, Ph.D and Joseph Garmon, Ph.D. Dr. Johnson examined Plaintiff on March 28, 2012, and indicated that Plaintiff could understand, remember, and carry out simple and some detailed instructions; could attend and concentrate to tasks for at least two hours at a time, and could adapt to routine changes in the work setting. However, Plaintiff would function best where contact with others was incidental. Dr. Johnson rated Plaintiff under the B criteria (which have since been updated) as mildly limited with respect to activities of daily living and moderately limited in the areas of maintaining social functioning and maintaining concentration, persistence, or pace. Dr. Johnson did not

find that Plaintiff had episodes of decompensation of extended duration. Tr. 391; 173-90.

Dr. Garmon completed a review of Plaintiff on June 13, 2012, concluding that Plaintiff could understand and remember simple and detailed instructions and procedures; could concentrate and persist for simple and detailed tasks; could make simple work-related decisions; could maintain concentration for extended periods; and could adapt to changes and set goals. However, Plaintiff would work best with object-oriented tasks rather than with people. Even though she had basic social skills, she would have problems getting along with coworkers and supervisors and accepting criticism. Dr. Garmon assessed mild limitation in activities of daily living and in concentration, persistence, or pace, with moderate limitations with respect to social functioning. Dr. Garmon also found no episodes of decompensation for extended duration. Tr. 352, 391.

ALJ Raleigh ultimately concluded that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, but she did not believe Plaintiff's statements concerning the intensity, persistence and limiting effect of these symptoms were consistent with the medical evidence and other evidence in the record. Tr. 391. According to ALJ Raleigh, Plaintiff had a highly skilled work history, which would have been foreclosed by the impairments

existing during the period at issue, but that did not foreclose all work activity. Plaintiff's mental status examinations consistently demonstrated no cognitive deficits and no thought disorders. Plaintiff's main limitation was working with others. Such a limitation did not foreclose all work activity.

ALJ Raleigh considered the limitations on social functioning suggested by Dr. Johnson, Dr. Garmon and Dr. Lee, ultimately concluding that Plaintiff can tolerate up to occasional interaction with the public. ALJ Raleigh gave great weight to the opinions of Dr. Johnson (allowing for "incidental contact" with the public) and Dr. Garmon (indicating that Plaintiff deals better with objects than people) but saw little difference between these limitations. ALJ Raleigh gave only some weight to Dr. Lee's conclusion that Plaintiff would be slightly to somewhat limited in social functioning because she believed that view understated Plaintiff's social limitations. ALJ Raleigh also considered the opinions of Dr. Gonzalez and Dr. Helmberg-Funk, but ultimately concluded that neither addressed social functioning directly and that any implication of marked or extreme social deficits would be an overstatement of the limitations. Tr. 392.

ALJ Raleigh recognized the conflict in the opinions of the consultative psychological examiner (Dr. Lee) and the State Agency psychological consultants (Dr. Garmon and Dr. Johnson). Dr. Lee found the Plaintiff was capable of

understanding, remembering, and carrying out basic and complex directions and Drs. Johnson and Garmon found that Plaintiff was capable of executing simple and detailed tasks. Tr. 392. As noted by ALJ Raleigh, all the consultants agreed that Plaintiff could perform at least semiskilled work from a cognitive standpoint. Further, ALJ Raleigh concluded that because of Plaintiff's anxiety predictability and stability are better and that higher complexities of work would lead to more change and more unpredictability. Accordingly, ALJ Raleigh would limit Plaintiff to simple repetitive tasks with a reasoning level of 1 or 2, with few workplace changes. In reaching this conclusion, ALJ Raleigh gave the opinion of Drs. Garmon and Johnson some weight and gave Dr. Lee's opinion little weight in these areas. ALJ Raleigh further found that neither Dr. Gonzalez nor Dr. Helmberg-Funk made any findings in this area.

ALJ Raleigh also gave no weight to the GAF scores reflected in the Kaiser-Permanente records because the American Psychiatric Association discontinued the use of such scores because of its "conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." ALJ Raleigh found no correlation between GAF scores and long-term functional abilities.

Case No. 4:21-CV-453-MAF

Further, ALJ Raleigh gave no weight to the submissions of Plaintiff's current therapist, Danielle Johnson, as those reports were too remote in time from the date last insured.

6.     **Through the date last insured, the claimant was unable to perform any past relevant work.** Plaintiff was previously employed as an accounting clerk, supervisor, bookkeeper, cash accounting clerk and accounts receivable clerk. This work constituted gainful activity that was performed long enough to achieve average performance and was performed within the relevant period. However, these are skilled jobs that require more than simple, routine tasks. Accordingly, ALJ Raleigh determined that Plaintiff was incapable of performing such work. Tr. 393.

7.     **Claimant was born on January 31, 1966 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).**

8.     **The Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

9.     **Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has**

transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     **Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).**

ALJ Raleigh inquired with the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and residual functional capacity. The vocational expert testified that given all of these factors, there were two positions which were available in significant numbers in the national economy: hand packager and machine packager/sealer. Both of these are unskilled jobs with a medium exertion level. ALJ Raleigh also concluded that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. Based on this finding, ALJ Raleigh determined that Plaintiff was not disabled during the relevant period. Tr. 394. Plaintiff's application for a period of disability insurance benefits filed on October 26, 2011, was denied.

**IV. Plaintiff's Claims**

Plaintiff raises three challenges to ALJ Raleigh's decision:

(1)     The hypothetical posed by ALJ Raleigh did not satisfy the remand ordered by the Appeals Council because it failed to consider Dr. Johnson's opinion that Plaintiff could only perform "some" detailed instructions, and failed to limit Plaintiff's interaction with the public in light of Dr. Garmon's view that Plaintiff had a marked limitation interacting with the public;

(2)     ALJ Raleigh's decision was not supported by substantial evidence because ALJ Raleigh refused to consider Plaintiff's GAF scores; and,

(3)     The ALJ and Appeals Council had no constitutional authority to decide the present case.

## Incomplete Hypothetical

Plaintiff's counsel provides an exhaustive review of Plaintiff's medical records. Those will not be repeated here because the remand from the Appeals Council does not require such a review and Plaintiff does not rely on all of these records in her challenges to ALJ Raleigh's decision. Instead, the discussion is limited to the records relating to the review provided by Dr. Johnson and Dr. Garmon.

Dr. Johnson, was a psychological consultant appointed by the State. [6] According to Plaintiff, Dr. Johnson opined that Plaintiff was moderately limited in: (1) her ability to understand, remember, and carry out detailed instructions; (2) her

---

[6] Plaintiff refers to Dr. Johnson as a state agency "medical" consultant. This is an error.

Case No. 4:21-CV-453-MAF

ability to maintain attention and concentration for extended periods; (3) her ability to work in coordination with or in proximity to others without being distracted by them; (4) her ability to interact appropriately with the general public; and, (5) her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 173-74. Dr. Johnson further opined that Plaintiff can understand, remember, and carry out simple and some detailed instructions; can attend and concentrate for at least two hours at a time; functions best in settings where contact with others is incidental; and can adapt to routine changes in the work setting. Tr. 175. Dr. Johnson further opined that Plaintiff was mildly restricted with respect to activities of daily living and moderately limited in maintaining concentration, persistence, and pace. Tr. 187.

Dr. Garmon also served as a state agency psychological consultant. According to Plaintiff, Dr. Garmon found that Plaintiff was markedly limited in the ability to interact appropriately with the general public; moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors; and moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 339.[7] Plaintiff was also

---

[7] Plaintiff's counsel misstates Dr. Garmon's findings in the Memorandum in Support of Plaintiff's Complaint. ECF No. 12. Although it varies only slightly and may have been the result of a clerical error, counsel reports that Dr. Garmon found that Plaintiff was "moderately limited in the ability to work in coordination with or proximity to others **without being distracted by them** or

mildly restricted in her activities of daily living and in maintaining concentration, persistence, or pace, and markedly limited in maintaining social functioning. Tr. 352.

Plaintiff also notes that Dr. Garmon opined that Plaintiff can: understand, remember, and carry out simple and detailed instructions; concentrate and persist for simple tasks and make simple work-related decisions; maintain concentration for extended periods; and has basic social skills, but would work best with objects rather than people or the public because Plaintiff would have problems getting along with coworkers and supervisors and accepting criticism. ECF No. 12, p. 6; Tr. 340. While Plaintiff's counsel fails to mention it in his Memorandum in Support of Plaintiff's Complaint, Dr. Garmon also explicitly concluded that none of these findings constituted a "substantial limitation." Tr. 340.

Plaintiff contends that ALJ Raleigh failed to properly consider and apply the opinions of both Dr. Johnson and Dr. Garmon. According to Plaintiff, ALJ Raleigh erred in applying Dr. Johnson's opinion because: (1) detailed tasks do not define or indicate semiskilled work; and (2) ALJ Raleigh's statement that Dr. Johnson agreed that the Plaintiff can perform semiskilled work or even detailed tasks is wrong. Plaintiff contends that ALJ Raleigh improperly correlated the ability to follow "detailed" instructions with the ability to do "semiskilled" work, a finding which

---

exhibiting behavioral extremes." ECF No. 12, p. 6. Dr. Garmon's actual findings are reflected above.

Case No. 4:21-CV-453-MAF

Plaintiff's counsel believes is not consistent with the caselaw or the controlling rules. "semiskilled work" is defined by how long it takes to learn it, not by its reasoning level. ECF No. 12, p. 15.

Moreover, Plaintiff contends that ALJ Raleigh erred in finding that Plaintiff was able to execute detailed tasks without limitation. Dr. Johnson concluded that Plaintiff was moderately limited in understanding, remembering, and carrying out detailed tasks and could only perform "some" detailed tasks. Id.; Tr. 175. Thus, according to Plaintiff, there was no basis for concluding that Dr. Johnson supported the finding that Plaintiff could perform semiskilled work or detailed work because of the apparent limitation on Plaintiff's ability to do "all" detailed work. The failure to include this limitation within the hypothetical posed to the VE, or to explain this omission, was fatal according to Plaintiff's counsel. ECF No. 12, p. 16.

With respect to Dr. Garmon's opinion, Plaintiff contends that ALJ Raleigh improperly found that where was no significant difference between Dr. Garmon's "dealing better with objects rather than people" and Dr. Johnson's limitation to "incidental contact" with the public. According to Plaintiff, reading Dr. Garmon's opinion appropriately would totally preclude Plaintiff from working with the public. Id., p. 17. Thus, the hypothetical tendered by ALJ Raleigh to the VE should not have even permitted occasional contact with the public.

Case No. 4:21-CV-453-MAF

As a result of ALJ Raleigh's failure to include moderate limitations on Plaintiff's ability to understand, remember and carry out detailed instructions (as reflected in Dr. Johnson's opinion) and the failure to preclude all interaction by Plaintiff with the public (as opined by Dr. Garmon), the decision rendered by ALJ Raleigh failed to adequately assess the opinion evidence and failed to pose a complete hypothetical to the VE.

### Rejection of GAF Score

Next, Plaintiff contends that ALJ Raleigh improperly gave no weight to the GAF scores assigned by Plaintiff's treating physicians because such scores constitute expert medical opinions which must be considered and afforded such weight as the ALJ properly explains should be afforded such evidence. According to Plaintiff, ALJ Raleigh's conclusion that Plaintiff's mental limitations are mild to moderate in nature are not consistent with a GAF score of 50. ECF No. 12, p. 21. While Plaintiff recognizes that GAF scores are not dispositive, her counsel contends that those scores are just like other medical opinion evidence and should be have been considered in the RFC assessment and the resulting hypothetical. Plaintiff requests remand of this matter so that the GAF score can properly be considered. Id., p. 22.

### Lack of Constitutional Authority

Plaintiff asserts a constitutional challenge to the Acting Commissioner's authority based on Seila Law LLC v. Consumer Financial Protection Bureau, 140 S. Ct. 2183, 2197 (2020), and argues that the statutory limitations in 42 U.S.C. § 902(a)(3) regarding the removal of the Social Security Commissioner violate the Separation of Powers Clause of the United States Constitution. ECF No. 12, pp. 22-25. In Seila Law, the Supreme Court found that the CFPB, an agency under the auspices of the Executive Branch, was headed by a single individual whom the President could remove only for cause and that this limit on the President's removal powers violated the Constitution's Separation of Powers Clause. Seila Law LLC, 140 S. Ct. at 2191. Relevant here, the Commissioner of Social Security, under 42 U.S.C. § 902(a)(3), is removable only for cause. Relying on Seila Law, Plaintiff argues the statute is unconstitutional; and the Defendant deprived him of a valid adjudicatory process. ECF No. 12, p. 25.

## V. Acting Commissioner's Response

Acting Commissioner Kijakazi responded to the Memorandum filed by Plaintiff, accepting the procedural and jurisdictional facts as set forth in Plaintiff's Memorandum and adopting the facts as stated in ALJ Raleigh's decision. ECF No. 16, pp. 2-3. The Acting Commissioner argues that: (1) substantial evidence

supports the ALJ's RFC assessment;[8] (2) the ALJ gave appropriate weight to the GAF scores contained in the record; and (3) Plaintiff's separation of powers argument does not entitle her to a rehearing of her disability claim. ECF No. 16.

## Substantial Evidence Supports the RFC

According to the Acting Commissioner, ALJ Raleigh's decision appropriately considered the opinion evidence regarding Plaintiff's limitations in social functioning as they related to Plaintiff's interaction with potential supervisors and coworkers and properly developed an RFC that properly weighed and implemented those opinions. In the Acting Commissioner's view, Plaintiff is asking the Court to reweigh that evidence, to substitute its judgment for that of the ALJ, and reach a different result; a request that is not appropriate under the applicable standard of review. ECF No. 16, p. 25. Even if there is evidence to support a contrary position, the Court should not reach a contrary result where there is substantial evidence to support the result reached by the ALJ.

More specifically, the Acting Commissioner argues that Plaintiff was not harmed by the ALJ's conclusion that Plaintiff may have been capable of semiskilled work because, ultimately, the RFC limited Plaintiff to performing simple, routine

---

[8] The Acting Commissioner did not respond to Plaintiff's arguments in the order presented by Plaintiff in her Memorandum.   For ease of reference, the Court will refer to the Acting Commissioner's Response in the order previously established by Plaintiff.

Case No. 4:21-CV-453-MAF

tasks at a reasoning level of 1 or 2. Tr. 386, 392; ECF No. 16, p. 25 n. 8. Even if the ALJ erred in concluding that some semiskilled work would be appropriate for Plaintiff, and that conclusion was not supported by the substantial evidence, Plaintiff would not be required to perform such work under the RFC ultimately assessed by ALJ Raleigh. Therefore, the suggestion that Plaintiff may be able to perform a higher level of service is irrelevant. Ultimately, the jobs which the ALJ concluded were available in sufficient numbers in the national economy did not require that Plaintiff provide semiskilled services.

Similarly, the Acting Commissioner contests Plaintiff's suggestion that Plaintiff could not perform detailed tasks, which would preclude any job requiring a reasoning level of 2. The Acting Commissioner argues there is no apparent conflict between a reasoning level 2 job and the ability to perform simple tasks and follow simple instructions. Accordingly, Plaintiff is able to perform the two level-2 jobs identified by the VE: hand packager and machine packager/sealer. ECF No. 16, p. 26.

The Acting Commissioner does not respond to Plaintiff's contention that ALJ Raleigh's RFC failed to properly limit Plaintiff's interaction with the general public, allowing occasional interaction, when Plaintiff suggests the appropriate hypothetical would completely eliminate any such interaction. Nonetheless, the Court will

Case No. 4:21-CV-453-MAF

consider below whether the hypothetical tendered by the ALJ was insufficient in that regard.

### Plaintiff's GAF scores

The Acting Commissioner contends that ALJ Raleigh appropriately refused to give any weight to the GAF scores assigned by her treating psychiatrist (Dr. Heinberg-Funk) because such scores are disfavored, are not dispositive when determining disability, and have no correlation when determining long-term functional abilities. Tr. 392; ECF No. 16, pp. 19-21. According to the Acting Commissioner, GAF scores are subjective, are not pertinent to a legal determination regarding disability, do not necessarily reflect a person's ability to work, and have routinely been discounted by the Eleventh Circuit Court of Appeals. Moreover, inasmuch as ALJ Raleigh expressly stated why she was rejecting such scores – that it is disfavored by the APA and she does not believe there is any correlation between GAF scores and long-term functional abilities – this Court should not reweigh the evidence and change the outcome. ECF No. 16, p. 21.

### The ALJ had Constitutional Authority to Act

The Acting Commissioner agrees that, to the extent 42 U.S.C. § 902(a)(3) is construed as limiting the President's authority to remove the Commissioner without cause, the removal provision is unconstitutional (ECF No. 14, pp. 6-7, citing Office

Case No. 4:21-CV-453-MAF

of Legal Counsel, U.S. Dep't of Justice, <u>Constitutionality of the Comm'r of Soc.</u>
<u>Sec.'s Tenure Protection</u>, 2021 WL 2981542 (July 8, 2021)). But, relying on <u>Collins</u>
<u>v. Yellen</u>, 141 S. Ct. 1761 (2021), the Acting Commissioner contends that even
where an unconstitutional statutory removal restriction exists, a plaintiff seeking
relief on that basis must show that the removal caused him or her harm, a showing
Plaintiff cannot make. ECF No. 16, p. 6. Moreover, the Acting Commissioner
contends that there are a variety of other legal doctrines – harmless error, de facto
officer, and the rule of necessity, as well as broad prudential considerations – that
reinforce that Plaintiff is not entitled to the relief she seeks merely because 42 U.S.C.
§ 902(a)(3) violates the separation of powers.

## VI.   LEGAL ANALYSIS

### Substantial Evidence Supports ALJ Raleigh's RFC

In Plaintiff's Memorandum (ECF No. 12) and during the hearing before ALJ
Raleigh (Tr. 403-44) Plaintiff argues that ALJ Raleigh erred by tendering a
hypothetical which failed to consider and apply the opinions of the state psychiatric
consultants. First, Plaintiff contends that ALJ Raleigh's RFC improperly allowed
any contact or interaction between Plaintiff and the general public and/or
supervisors/coworkers. Plaintiff's counsel summarized this position with a question
posed to the VE:

Case No. 4:21-CV-453-MAF

> If they have a hard time dealing with supervision
> occasionally, wouldn't it seem to follow that they may
> have a hard time dealing with supervision at any time?

Tr. 437. While this may be a reasonable or logical conclusion, that was not the view

of any of the consulting experts. None of those experts went so far as to say no

contact should occur between Plaintiff and any other person – whether those persons

are members of the public, coworkers, or supervisors. Dr. Johnson concluded that

Plaintiff would "function best in settings where contact with others is incidental."

Tr. 175. But he also concluded that Plaintiff "appears to have an anxiety related

disorder that has improved somewhat since 2/2009." Tr. 189. Dr. Garmon opined

that Plaintiff was "markedly limited" in her ability to interact appropriately with the

general public (Tr. 339), and, similarly, that Plaintiff has "basic social skills but

would work best with objects rather than people or the public. [Plaintiff] would also

have some problems getting along with coworkers and supervisors and accepting

criticism for the same reason." Tr. 340. But Dr. Garmon also noted that "this is not

substantially limited." Id.; see also Tr. 354 (Dr. Garmon concluding that while

Plaintiff has mental health issues those "limitations [are] not substantial.") Neither

Dr. Johnson nor Dr. Garmon went so far as to say Plaintiff should have absolutely

no contact with all other human beings. If that were the case, then the consultants

would have classified Plaintiff as "extremely limited" as opposed to "markedly

limited." <u>See</u> § 12.00(F)(2)(b), (c), (d), (e) (stating that a "marked limitation" indicates claimant's functioning is "seriously" limited; and "extreme limitation" means claimant is "not able to function in this area"). Plaintiff's argument that she should not be required to interact with others at all is not supported by the substantial evidence in this case.

Instead, as reflected in ALJ Raleigh's decision, Plaintiff was capable of "occasional" but limited interaction with the public during the relevant period. Tr. 391-92. That conclusion is consistent with the reports of the agency consultants retained in this case. Moreover, they were properly included in the hypothetical proffered by ALJ Raleigh to the VE during the hearing. Tr. 430 (providing for "occasional interaction with supervisors, coworkers, and the public. But no teamwork and no direct public service."). ALJ Raleigh's assessment of Plaintiff's RFC appropriately concluded that Plaintiff could have some contact with other human beings. Furthermore, her hypothetical properly presented the issue to the VE who opined that there were jobs in the national economy that could be performed by Plaintiff during the relevant period with an appropriate limit on contact with others.

Similarly, ALJ Raleigh's conclusion that Plaintiff could perform at least semiskilled work was consistent with the opinions of Dr. Lee (who stated that Plaintiff was "capable of understanding, remembering, and carrying out basic and

Case No. 4:21-CV-453-MAF

complex directions"), as well as Dr. Johnson and Dr Garmon (who both opined that Plaintiff was capable of executing simple and complex tasks). Tr. 392. Arguably, those opinions could have been interpreted to support a finding that Plaintiff was still capable of performing even skilled work. However, because of Plaintiff's mental health challenges, ALJ Raleigh limited Plaintiff to simple, repetitive tasks with a reasoning level of 1 or 2. ALJ Raleigh actually limited Plaintiff to less stressful, less intellectually challenging work than suggested by the consultants, which she believed would be less likely to cause Plaintiff debilitating stress. As reflected in ALJ Raleigh's decision, there is substantial evidence to support that conclusion and it must be upheld. Plaintiff's argument that Dr. Johnson's statement that Plaintiff could only perform "some" detailed tasks would preclude her from carrying out the tasks required of a level 2 jobs is not supported by the evidence in this case, especially since ALJ Raleigh further limited Plaintiff's RFC to positions which required simple repetitive tasks to account for Plaintiff's mental health challenges. The jobs proposed by the VE were consistent with ALJ Raleigh's hypothetical.

Accordingly, because ALJ Raleigh developed an appropriate RFC, and the VE identified two positions which were consistent with the RFC provided by ALJ Raleigh, and those positions were available in sufficient numbers in the national

economy, Plaintiff's argument for remand to reconsider Plaintiff's mental health challenges is denied on its merits.

## ALJ Raleigh Properly Discounted Plaintiff's GAF Scores

Plaintiff suggests that ALJ Raleigh erred by refusing to consider the GAF scores assigned to Plaintiff by Dr. Helmberg-Funk. ECF No. 12, p. 18. This is not entirely accurate. Instead, ALJ Raleigh did consider the GAF scores, but determined that they were entitled to no weight. Tr. 392. ALJ Raleigh also provided reasons for rejecting those scores: the APA has discontinued use of those scores and dropped it from the DSM-5. ALJ Raleigh further concluded that there was no correlation between GAF scores and long-term functional abilities. Id. That view of GAF scores has been confirmed by the Eleventh Circuit. Morales v. Comm'r of Soc. Sec., 2023 WL 155213, *7 (11th Cir. January 11, 2023). This Court is in no position to second guess ALJ Raleigh's decision regarding the appropriate weight to be given to those scores in light of the ALJ's consideration of the evidence and stated reasons for discounting it. Hunter, 808 F. 3d at 823 ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it").

**ALJ Raleigh Acted with Constitutional Authority**

Plaintiff contends that ALJ Raleigh and the Appeals Council lack constitutional authority to act in this case because the former Commissioner of Social Security Andrew Saul was appointed through an invalid process. Courts within the Eleventh Circuit have repeatedly held that the separation-of-powers argument is meritless in this context. Corns v. Comm'r of Soc. Sec., No. 8:20-cv-2605-VMC-SPF, 2022 WL 2975102 (M.D. Fla. June 30, 2022), report and recommendation adopted, No. 8:20-cv-2605-VMC-SPF, 2022 WL 2966855 (M.D. Fla. July 27, 2022); Herring v. Comm'r of Soc. Sec., No. 2:21-cv-322-MRM, 2022 WL 2128801 (M.D. Fla. June 14, 2022); Vickery v. Comm'r of Soc. Sec., No. 5:21-cv-122-PRL, 2022 WL 252 464 (M.D. Fla. Jan. 27, 2022); Tibbetts v. Comm'r of Soc. Sec., No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 2:20-cv-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); Perez-Kocher v. Comm'r of Soc. Sec., No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *3-4 (M.D. Fla. Nov. 23, 2021), report and recommendation adopted, No. 6:20-cv-2357-GKS-EJK, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022). Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner of Social Security, Nancy Berryhill, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. In

Collins, the Supreme Court addressed the removal of an Acting Director and found that "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation." Collins v. Yellen, 141 S. Ct. at 1781. Section 902(a)(3) restricts only the removal of the Commissioner and does not reference an acting Commissioner. It follows that Acting Commissioner Berryhill's appointment was constitutional. Id., at 1782.

Put differently, Acting Commissioner Berryhill was not subject to the unconstitutional removal provision on which Plaintiff bases his claim, and any ratification of an ALJ by Acting Commissioner Berryhill would make that appointment constitutional. "[O]n July 16, 2018 the Acting Commissioner of Social Security [Nancy Berryhill] ratified the appointments [of the Social Security Administration's] ALJs and approved those appointments as her own." 84 Fed. Reg. 9583 (2019). So, here, ALJ Raleigh's appointment, as ratified, is valid. [9] ALJ Raleigh issued his decision in Plaintiff's case on February 4, 2020, well after the ratification date of ALJ appointments by Acting Commissioner Berryhill. Consequently, 42 U.S.C. § 902(a)(3) – the unconstitutional removal provision – did

---

[9] ALJ Raleigh has been serving as an ALJ in Florida since at least August 28, 2015. See Ross v. Berryhill, Acting Comm'r of Soc. Sec., 2018 WL 1417184, *1 (N.D. Fla. February 26, 2018) (acknowledging ALJ Raleigh as the assigned ALJ who issued the underlying decision at issue in that case following a hearing held on August 25, 2015).

Case No. 4:21-CV-453-MAF

not affect Plaintiff's case. While there may be other reasons why the Commissioner should prevail on this issue, there is no reason to address those issues here. Plaintiff's argument fails.

## CONCLUSION

For the reasons stated above, considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, the decision of the Acting Commissioner to deny Plaintiff's application for Social Security disability benefits is **AFFIRMED**. Plaintiff's Memorandum in Support of the Complaint is **DENIED**. The Clerk **SHALL ENTER JUDGMENT FOR THE DEFENDANT AND CLOSE THE FILE.**

**DONE AND ORDERED** on March 3, 2023.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

42